UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSEMARY WHITE,

    Plaintiff,

v.                                        Case No. 4:12-cv-11600
                                            HON. MARK A. GOLDSMITH

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER ACCEPTING AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DKT. 18), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 14), AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 17)**

### I.    INTRODUCTION

This is a social security case. Plaintiff Rosemary White appeals from the final determination of the Commissioner of Social Security that she is not disabled and therefore not entitled to disability insurance benefits. The Court entered an order referring the matter to Magistrate Judge David R. Grand (Dkt. 3). The parties have filed cross motions for summary judgment (Dkts. 14, 17). On June 27, 2013, Magistrate Judge Grand issued a report and recommendation ("R & R"), recommending that Defendant's motion for summary judgment be granted, Plaintiff's motion for summary judgment be denied, and the Commissioner's denial of benefits be affirmed (Dkt. 18). Plaintiff has filed objections to the R & R (Dkt. 21). The Court reviews de novo those portions of the R & R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). For the reasons that follow, the Court accepts and adopts the Magistrate Judge's R & R, grants Defendant's motion for summary judgment, denies Plaintiff's motion for summary judgment, and affirms the denial of benefits.

1

## II. BACKGROUND

The factual and procedural background of this case, along with the standard of review and legal principles governing social security appeals, were thoroughly set forth by the Magistrate Judge in his R & R and need not be repeated in full here. Nevertheless, a brief history is helpful to explain the Court's reasoning below.

Plaintiff initially filed for benefits in May 2009, claiming disablement due to "fibromyalgia, disc disease, bilateral central canal stenosis, osteoarthritis, blurred vision left eye, chronic pain and fatigue, migraines, problems with memory and concentration, [and] chest pain." Administrative Record ("A.R.") at 84, 126. Plaintiff alleged that she became unable to work due to her disabling conditions on June 19, 2008. Id. at 126. Her claim was denied in September 2009 and she subsequently requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 84-87, 88. That hearing occurred on May 12, 2010 before ALJ Paul Armstrong. Id. at 32. At the hearing, the ALJ heard testimony from Plaintiff and from Annette Holder, a vocational expert. Id. The ALJ also reviewed medical records and forms submitted by Plaintiff and her representative. Id. at 78-81.

The ALJ confirmed the denial of benefits on June 2, 2010. Id. at 70. The ALJ reached his decision using the Commissioner's five-step sequential disability analysis set forth at 20 C.F.R. § 404.1520 (2012). Under Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 19, 2008. Id. The ALJ also found that Plaintiff had the following severe impairments under Step Two: fibromyalgia, degenerative disc disease, and chronic headaches. Id. At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listed Impairments. Id. at 71. As relevant to Plaintiff's objections, the ALJ noted as follows:

2

> [Plaintiff's] fibromyalgia does not meet or medically equal the criteria of listing 14.06B because there is insufficient medical evidence to support the conclusion that this impairment has resulted in either at least two of the requisite symptoms or signs, or a marked limitation in the claimant's activities of daily living, social functioning, or ability to complete tasks in a timely manner due to deficiencies in her concentration, persistence, or pace.

The ALJ added in a footnote that "[t]wo of the following constitutional symptoms or signs must be present: severe fatigue, malaise, fever, or involuntary weight loss." Id. Finally, at Step Four, the ALJ concluded after a review of the evidence that Plaintiff has the residual functional capacity to perform her past work as a switchboard operator, receptionist, and vendor services representative. Id. at 71-76.

Plaintiff subsequently requested a review of the ALJ's decision by the Appeals Council. Id. at 22-31, 225-227. In support of her request, Plaintiff submitted numerous additional documents to the Appeals Council, including various medical records from both before and after the ALJ's decision. Id. at 225-227.

The Appeals Council denied Plaintiff's request for review on March 8, 2012. Id. at 1. The Appeals Council included in the administrative record some, but not all, of the supplemental documents that Plaintiff had submitted after the ALJ's decision. Id. at 6. The additional documents that were included in the record were reviewed by the Appeals Council in considering Plaintiff's request, but the Appeals Council concluded that the evidence did "not provide a basis for changing the Administrative Law Judge's decision."[1] Id. at 1-2. For the additional documents the Appeals Council "looked at" but did not use as part of its review, the Appeals

---

[1] The Appeals Council considered the following additional evidence, which it made part of the record: (1) a Representative brief from Eva I. Guerra, dated March 5, 2012; (2) evidence from Michael Krivitsky, D.O., dated August 25, 2006 to August 13, 2008; (3) evidence from St. Joseph Mercy-Oakland, dated May 3, 2010 to May 19, 2010; (4) evidence from Steve Bolton, D.O., dated May 8, 2008 to July 14, 2010; and (5) evidence from William Gonte, M.D., dated August 1, 2008 to June 26, 2010. A.R. 6.

Council noted that the ALJ decided Plaintiff's case through June 2, 2010 but that the "new information is about a later time."[2] Id. at 2. Therefore, the Appeals Council concluded that these documents would "not affect the decision about whether [Plaintiff was] disabled beginning on or before June 2, 2010," and they were excluded from the record. Id. The ALJ's order became the final decision upon the Appeals Council's denial of Plaintiff's request for review. See Sims v. Apfel, 530 U.S. 103, 106-107 (2000) (internal citations omitted). Plaintiff filed this appeal thereafter. Compl. (Dkt. 1).

### III.  DISCUSSION

Magistrate Judge Grand issued an R & R on June 27, 2012 recommending that the ALJ's decision be affirmed. (Dkt. 18). Plaintiff now raises three objections to the R & R. Two of these objections (designated by Plaintiff as Objection Nos. 1 and 3) concern the additional documents Plaintiff submitted to the Appeals Council following the ALJ's decision. First, Plaintiff argues that some of these records are not part of the administrative record and thus appear to "not have been reviewed" by the Appeals Council. Pl.'s Objections at 18 (Dkt. 21) (designated by Plaintiff as "Objection No. 1"). She contends that because it is "unknown whether the Appeals Council had the opportunity to look at these records," this constitutes "error on the part of the Administration." Id. at 18-19, 23.

Second, Plaintiff objects to the Magistrate Judge's recommendation not to remand the matter for further consideration of the additional evidence. Id. at 22-24 (designated by Plaintiff

---

[2] These documents include the following medical records: (1) from St. Joseph Mercy Medical Clinic, dated June 9, 2010; (2) from St. Joseph Mercy Oakland, dated June 11, 2010 to July 11, 2010; (3) from Michael Krivitsky, D.O., dated June 24, 2010; (4) from Raj Grewal, M.D., dated July 9, 2010; (5) from Hima Challa, M.D., dated August 3, 2010; (6) from Thomas Rosenbaum, Ph.D., dated September 12, 2010; (7) from Caleb W. Schroeder, M.D., dated January 21, 2011 to April 1, 2011; (8) from William Gonte, M.D., dated January 31, 2011; and (9) from John Cegielski, M.D., dated June 28, 2011. A.R. 2. Plaintiff attached some, though not all, of these records to her motion for summary judgment. Pl.'s Mot. for Summ. J. (Dkt. 14-2 through 14-6).

as "Objection No. 3"). Plaintiff argues that the additional evidence is new and material, and that good cause exists for why the documents were not provided to the ALJ in the first instance. Id. Therefore, Plaintiff claims that remand is appropriate pursuant to 42 U.S.C. § 405(g).

Plaintiff's third objection (designated by Plaintiff as "Objection No. 2") challenges the ALJ's finding that Plaintiff's fibromyalgia did not meet or medically equal a Listed Impairment. Id. at 21-22. She suggests that while the ALJ noted the criteria for the applicable Listed Impairment, "he did not discuss any of the evidence which would provide the reader with an understanding as to the rationale for this decision." Id. Defendant filed no response to the objections. The Court will address each objection in turn.

### A. Objection Nos. 1 and 3 Regarding The Evidence Submitted to the Appeals Council

#### i. The Appeals Council Looked At the Additional Evidence.

A party may submit additional evidence to the Appeals Council following a decision by an ALJ when requesting review. "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b) (2012).

Plaintiff first contends that the Magistrate Judge should have found error "on the part of the Administration for having either misplaced and/or lost Exhibits which were submitted at the Appeals Council, which appear to not have been reviewed." Pl's Objections at 18 (Dkt. 21). Plaintiff asserts that "it is unknown whether the Appeals Council had the opportunity to look at these records at all," and that "had the Appeals Council been able to review these records, a

5

different decision would have been made by the Appeals Council." Id. at 23 (emphasis in original). Plaintiff's argument, however, is not supported by the record.

Plaintiff submitted numerous additional documents to the Appeals Council in support of her request for review of the ALJ's decision. A.R. at 225-227. The Appeals Council went through each of these documents and either incorporated them into the record for use in reviewing Plaintiff's request or explained why it did not do so. Compare A.R. at 225-227 with A.R. at 1-2, 6. For example, the Appeals Council noted that it had received Dr. Krivitsky's notes dated August 25, 2006 to August 13, 2008, and that it "is making [these notes] part of the record." Id. at 6. Indeed, these documents appear in the administrative record currently before this Court. Id. at 357-380. The Appeals Council also explained that it "considered . . . [this] additional evidence" in its review, but that it "found that this information does not provide a basis for changing the Administrative Law Judge's decision." Id. at 1-2.

Similarly, the Appeals Council "looked at" the documents submitted by Plaintiff that post-dated the ALJ's decision, including the prescription for a cane, Dr. Challa's Medical Source Statement, and Dr. Rosenbaum's psychological evaluation. Compare Pl.'s Objections at 19 (Dkt. 21) with A.R. at 2 (identifying "St. Joseph Mercy Medical Clinic, dated June 9, 2010; . . . Hima Challa, M.D., dated August 3, 2010; Thomas Rosenbaum, Ph.D., dated September 12, 2010"). The Appeals Council explained that the ALJ decided Plaintiff's case through June 2, 2010 and that "[t]his new information is about a later time." A.R. at 2. As a result, the Appeals Council concluded that the post-dated documents do "not affect the decision about whether [Plaintiff was] disabled beginning on or before June 2, 2010." Id.; see also 20 C.F.R. § 404.970(b).

6

Therefore, Plaintiff's assertion that the post-decision documents must not have been reviewed by the Appeals Council because they are "missing," "misplaced," or "lost" is incorrect. Pl.'s Objections at 18-20. The Appeals Council expressly acknowledged looking at the documents post-dating the ALJ's decision, but it declined to include this evidence in the record because it concluded the evidence did not "relate[] to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b); see also A.R. at 2. Plaintiff's concern that it is "unknown whether the Appeals Council had the opportunity to look at these records at all" is thus misplaced.[3] The Court overrules Plaintiff's first objection.

### ii. Plaintiff Has Not Met the Requirements for Sentence Six Remand.

Plaintiff also argues that the Magistrate Judge erred in declining to recommend a remand of this matter in light of the additional evidence pursuant to Sentence Six of 42 U.S.C. § 405(g). Pl.'s Objections at 22-24. That provision provides that a court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." A claimant bears the burden of proving these elements with respect to the subject evidence. Lee v. Comm'r of Soc. Sec., No. 12-6226, 2013 WL 3388486, at *11 (6th Cir. July 9, 2013).

For purposes of remand, evidence is "new" only "if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (citing Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)). Evidence is

---

[3] Plaintiff also claims the Appeals Council "declined to review" medical records by Dr. Krivitsky that pre-dated the ALJ's decision but that were submitted for the first time to the Appeals Council. Pl.'s Objections at 3. However, the record indicates the Appeals Council did consider this additional evidence, but concluded that it did not provide a basis for changing the ALJ's decision. See A.R. at 1-2, 6.

"material" only if "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" Id. (quoting Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988)).  Finally, a claimant shows "good cause" "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Id. (citing Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (6th Cir. 1984) (per curiam)).  "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." Courter v. Comm'r of Soc. Sec., 479 F. App'x 713, 725 (6th Cir. 2012).  Rather, the claimant must "give a valid reason for [her] failure to obtain evidence prior to the hearing," including "detailing the obstacles that prevented the admission of the evidence." Id. (internal citations omitted).

Plaintiff claims that good cause exists for her not having submitted the additional evidence to the ALJ in the first instance.  In particular, Plaintiff states that the information was not available prior to the hearing, either because the relevant medical professionals had not yet provided the information, the reports had not been created, or the diagnoses had not been made. Pl's Objections at 23-24.  Yet, as the Magistrate Judge noted, Plaintiff provides no explanation for her failure to seek this evidence prior to the ALJ's decision.  Plaintiff was represented by counsel at the ALJ hearing (albeit different counsel than present) and she had previously seen many of the doctors whose records are now at issue.  For example, Dr. Challa writes in his Medical Examination Report that he first examined Plaintiff in 2008, but there are no earlier records from Dr. Challa in the record and Plaintiff continues to offer no explanation for why she could not have requested, obtained, and submitted the reports from Dr. Challa before June 2, 2010.  Dr. Challa Medical Examination Report at 1 (Dkt. 14-4).  The same is true for the

prescription for a cane that Plaintiff obtained days after the ALJ's decision. See Courter, 479 F. App'x at 725 ("The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement.").

Plaintiff also offers no description of obstacles she would have faced in obtaining the evaluation of a mental health professional before June 2010. Correspondingly, she provides no justification for why it was then possible for that evaluation to be completed three months after the ALJ's decision. Plaintiff does mention that she saw Dr. Rosenbaum after the Department of Human Services referred her to him "[a]s a result of Dr. Challa's notations regarding plaintiff's mental impairment." See Pl.'s Objections at 15 (Dkt. 21). However, Plaintiff does not explain why this referral could not have been made before the ALJ's decision, particularly given that Dr. Challa first saw Plaintiff in 2008 and that he believed Plaintiff's condition had existed and persisted since at least June of that year.[4] Dr. Challa Medical Examination Report at 1-2 (Dkt. 14-4); Dr. Challa Medical Source Statement at 5, 9 (Dkt. 14-4). Plaintiff's objections to the

---

[4] The Court does note that the Appeals Council's conclusion that Dr. Challa's report "is about a later time" and thus does not relate back to the period on or before the ALJ's decision may have been erroneous. A.R. at 2. In his Medical Source Statement, Dr. Challa notes that Plaintiff has restrictions regarding her ability to sit, stand, lift, and be present for work. Challa Medical Source Statement (Dkt. 14-4). Dr. Challa added that Plaintiff's "condition [has] existed and persisted with the restrictions as outlined in this Medical Source Statement at least since 6/2008." Id. at 10. This issue is not squarely raised in Plaintiff's objections and is therefore waived. See Willis v. Sullivan, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers, Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Even were this issue not waived, however, the Court notes that, unlike some other circuit courts, the Sixth Circuit uses the Sentence Six remand standard for all evidence submitted after the ALJ's decision, even where the claimant alleges the Appeals Council improperly excluded the evidence from its review. Compare Wyatt v. Sec'y of Health and Human Servs., 974 F.2d 680, 685 (6th Cir. 1992)) and Bass v. McMahon, 499 F.3d 506, 513 (6th Cir. 2007) with Getch v. Astrue, 539 F.3d 473, 483-484 (7th Cir. 2008) (de novo review of whether Appeals Council made an error of law in applying the regulation governing consideration of additional evidence) and Sneed v. Barnhart, 214 F. App'x. 883, 885 (11th Cir. 2006) (same). Therefore, even if the Appeals Council erred in concluding that Dr. Challa's report does not relate back to the relevant period, Plaintiff still has the burden of showing materiality and good cause for failing to produce the evidence earlier.

Magistrate's R & R is devoid of any substantive factual explanation for why these records could not have been prepared and provided to the ALJ prior to his decision. Instead, Plaintiff relies on broad statements that "good cause" exists. Without a discussion of the obstacles that prevented the earlier admission of the evidence, Plaintiff cannot satisfy the "good cause" requirement. See Courter, 479 F. App'x at 725.

Finally, in regards to the documents surrounding the post-decision diagnosis of pancreatic cancer, the Court agrees with the Magistrate Judge that Plaintiff likely meets the "good cause" requirement for these documents, but nonetheless fails to satisfy the materiality element for remand. As the Magistrate Judge detailed in his recommendation, the medical records from both before and after the ALJ's decision either revealed no significant abnormalities or could have related to a number of other conditions Plaintiff experienced, including a yeast infection and colon and rectal polyps. See, e.g., A.R. at 255-257, 269, 326, 328, 332, 339, 341, 351, 365, 374-75, 376-377, 384-385, 394-396. As a result, there is not a reasonable probability the ALJ would have attributed Plaintiff's abdominal discomfort during the relevant time period to a later diagnosis of pancreatic cancer. Indeed, Plaintiff does not challenge these findings in her objections, but merely "submits that the evidence presented is both new and material" without further explanation. Pl.'s Objections at 24 (emphasis in original).

Therefore, the Court overrules Plaintiff's objections regarding the additional evidence she submitted to the Appeals Council and declines to remand the case pursuant to Section Six of 42 U.S.C. § 405(g).

### B. Objection No. 2 Regarding The ALJ's Step Three Analysis

Plaintiff also objects to the Magistrate Judge's recommendation that substantial evidence supports the ALJ's Step Three analysis. Pl.'s Objections at 20-22 (Dkt. 21). As noted earlier,

the Social Security Administration regulations create a five-step sequential evaluation process to determine disability:

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." . . . At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." . . . . At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. . . . . If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 23-25 (2003) (citing 20 C.F.R. § 404.1520 (2003)).

Here, the ALJ's findings that Plaintiff has not engaged in "substantial gainful activity" since June 19, 2008 (Step One) or that Plaintiff suffers severe impairments (Step Two) are undisputed. A.R. at 70. Plaintiff instead focuses on the ALJ's Step Three determination; she claims this analysis was minimal, non-analytic, and conclusory. Pl.'s Objections at 21-22.

An ALJ must include a discussion of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." See 5 U.S.C. § 557(c)(3)(A)). Step Three of the sequential analysis requires an ALJ to determine whether a claimant's medical impairments meet or medically equal a Listed Impairment. As relevant here, the ALJ noted as follows:

> [Plaintiff's] fibromyalgia does not meet or medically equal the criteria of listing 14.06B because there is insufficient medical evidence to support the conclusion that this impairment has resulted in either at least two of the requisite symptoms or signs, or a marked limitation in the claimant's activities of daily living, social functioning, or ability to complete tasks in a timely manner due to deficiencies in her concentration, persistence, or pace.

A.R. at 71. The ALJ added in a footnote that "[t]wo of the following constitutional symptoms or signs must be present: severe fatigue, malaise, fever, or involuntary weight loss." Id.

The Court notes that this decision is lacking in an analysis of the evidence both supporting and going against the ALJ's determination. The ALJ's analysis simply lays out the required elements to meet or medically equal the subject Listing without discussing any evidence in the record. Such an analysis fails on its face to satisfy the ALJ's obligation "to discuss the evidence and explain why he found that [Plaintiff] was not disabled at [S]tep [T]hree." M.G. v. Comm'r of Soc. Sec., 861 F. Supp. 2d 846, 858 (E.D. Mich. 2012) (quoting Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)).

Nevertheless, the Court's analysis does not end here. The Court may "overlook the ALJ's failure to articulate his Step Three findings if the error is harmless in nature." Id. at 859. The Court may find harmless error when "concrete factual and medical evidence is apparent on the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled." Id. at 861 (emphasis in original) (quoting Juarez v. Astrue, No. 09-160, 2010 WL 743739, at *5-6 (E.D. Tenn. Mar. 1, 2010)).

Further, in making its determination, the Court is not constrained to reviewing solely the ALJ's Step Three analysis. In Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006), the Sixth Circuit concluded that an ALJ's Step Three analysis was sufficient because the ALJ "described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings." Numerous courts have read Bledsoe as "implicitly endors[ing] the practice of searching the ALJ's entire decision for statements supporting his [S]tep [T]hree analysis." Staggs v. Astrue, No. 09-00097, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011); see also Kauffman v. Comm'r of Soc. Sec., No. 12-11923, 2012

WL 7240935, at *12 (E.D. Mich. Dec. 28, 2012), accepted and adopted by 2013 WL 687044, at *1 (E.D. Mich. Feb. 26, 2013); Smith v. Comm'r of Soc. Sec., No. 11-14429, 2012 WL 4897364, at *6 (E.D. Mich. Sept. 14, 2012), accepted and adopted by 2012 WL 4900424, at *1 (E.D. Mich. Oct. 16, 2012). Moreover, the practice of looking at other portions of an ALJ's decision to support a Step Three conclusion is well established in other circuit courts. See, e.g., Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (reviewing an ALJ's analysis at subsequent steps of the evaluation to find that substantial evidence supported the Step Three determination); Fischer-Ross v. Barnhart, 431 F.3d 729, 733-735 (10th Cir. 2005) (using an ALJ's findings at Step Four and Five in determining whether a claimant qualified for a listing under Step Three). Accordingly, this Court will consider the ALJ's decision as a whole in deciding whether the ALJ would have found Plaintiff not disabled in his Step Three analysis.

The ALJ provided an extensive analysis of the evidence before him at Step Four of his analysis. See A.R. 71-76. In regards to Plaintiff's fibromyalgia, the ALJ found that scans of Plaintiff's neck and back pain failed to detect any significant abnormalities and that a February 2010 straight leg raise test was negative. Id. at 73-75. The ALJ also recognized that Plaintiff has been "repeatedly observed to have normal strength, sensation, and reflexes in her extremities" and that she has "intact grip strength and intact (or nearly intact) range of motion in her shoulders, hips, knees, ankles, wrists, and hands." Id. at 74. The ALJ then highlighted that Plaintiff's 2009 consultative physical examination resulted in a notation that Plaintiff was able to perform a "range of postural, exertional, and manipulative activities." Id. Finally, in regards to Plaintiff's own statements regarding her impairments, the ALJ noted that Plaintiff is able to drive a car, prepare meals, perform light cleaning, do laundry, manage finances, and shop. Id. As a result of these statements, as well as the objective medical evidence, the ALJ concluded that

Plaintiff's claims concerning the "intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [his] residual functional capacity assessment." Id. at 75.

In response to the ALJ's findings, Plaintiff cites to additional medical evidence submitted after the ALJ's decision to support her claim that her conditions medically equal a Listed Impairment. See, e.g., Pl.'s Objections at 21 (Dkt. 21). However, it is clear and settled law in the Sixth Circuit that "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).[5] Plaintiff cites little objective medical evidence that was before the ALJ that would support a finding of at least two of the following constitutional symptoms or signs: "severe fatigue, fever, malaise, or involuntary weight loss." See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1406.B; see also Thacker v. Soc. Sec. Admin., 93 F. App'x. 725, 727-728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). On the other hand, the evidence supports the ALJ's conclusion that Plaintiff's impairment did not meet or medically equal the requirements for Listing 14.06B. For example, numerous medical examinations found that Plaintiff had normal constitutional findings, was awake and alert, and did not have severe fever or involuntary weight loss. See, e.g., A.R. at 237, 239, 289, 298-299, 326, 332, 341.

---

[5] Plaintiff also offhandedly claims that the ALJ should have considered her physical conditions "in combination with her emotional impairments." Pl.'s Objections at 22. Yet, Plaintiff's argument depends on her alleged mental impairments "as documented by Dr. Rosenbaum." Id. Dr. Rosenbaum's report was not before the ALJ and thus is not appropriate for the Court's substantial evidence review. See Foster, 279 F.3d at 357.

The limited pre-ALJ-decision evidence of fatigue that Plaintiff does cite to consist mainly of Plaintiff's own reporting of her conditions: statements she made to physicians, in her testimony before the ALJ, and in forms she completed and provided to the Agency for her disability claim. Pl.'s Objections at 21-22 (Dkt. 21). The ALJ concluded that these statements concerning "the intensity, persistence and limiting efforts of the[] symptoms are not credible to the extent they are inconsistent with" his determination that she could perform work-related activities. A.R. at 74-75. Moreover, to the extent Plaintiff's self-reporting is reflected in medical reports, the Sixth Circuit has noted that a report that merely repeats a patient's assertions about her level of pain and ability to sleep, stand, and walk is not objective medical evidence. See Young v. Sec'y of Health and Human Servs., 925 F.2d 146, 151 (6th Cir. 1990). Indeed, some of the physician's notes in the reports Plaintiff cites appear to undermine Plaintiff's contention that she was suffering from severe fatigue during the relevant time period. See, e.g., A.R. at 237 ("Plaintiff is awake and alert"), 239 (same), 298 ("She is fatigued but it is better since she has been given sleeping pills").

Further, contrary to the Listing's requirement that Plaintiff have a marked limitation in activities of daily living, social functioning, or ability to complete tasks in a timely manner, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1406.B, the ALJ concluded that although Plaintiff's ability to attend to daily activities and hobbies is "restricted by her impairments," she "retains a functional independence consistent with the [ALJ's] conclusions, rather than with the claimant's allegations of disability." A.R. at 74. The ALJ also found that the Plaintiff's statements concerning the "limiting effects of [her] symptoms are not credible to the extent they are inconsistent" with his assessments. Id. at 75. In other words, the ALJ's findings support a conclusion that Plaintiff's limitations, although restrictive, were not markedly so. See Stankoski v. Astrue, No. 12-4227,

2013 WL 4045974, at *3 n.1 (6th Cir. Aug. 12, 2013) (a "marked" limitation is one where the degree of limitation is such as to interfere "seriously with the ability to function independently, appropriately, effectively, and on a sustained basis."). This is supported by Plaintiff's statements that she was able to dress, shower, prepare meals, do light cleaning and laundry, take medication without reminders, drive, go shopping on her own, handle financial affairs, watch television, talk on the telephone, and visit family. See A.R. at 46-48, 186-189; see also Young, 925 F. 2d at 150 (finding no marked limitation in activities of daily living where claimant took care of personal needs, dusted, washed dishes, went grocery shopping, cooked, read, watched television, drove an automobile, ran errands, and occasionally engaged in social activities).

Accordingly, although the ALJ's Step Three analysis was lacking, his subsequent findings, as well as "concrete factual and medical evidence" in the record, reveal that the ALJ would have found Plaintiff not disabled even if his Step Three findings were more complete. See M.G., 861 F. Supp. 2d at 860-861. The Court overrules Plaintiff's third objection.

## IV.   CONCLUSION

For the foregoing reasons, the Court accepts and adopts the Magistrate Judge's Report & Recommendation (Dkt. 18), overrules Plaintiff's objections (Dkt. 21), denies Plaintiff's Motion for Summary Judgment (Dkt. 14), and grants Defendant's Motion for Summary Judgment (Dkt. 17).

SO ORDERED.

Dated:  September 16, 2013                s/Mark A. Goldsmith
         Flint, Michigan                  MARK A. GOLDSMITH
                                          United States District Judge

**CERTIFICATE OF SERVICE**

  The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 16, 2013.

                s/Deborah J. Goltz
                DEBORAH J. GOLTZ
                Case Manager